Tagged Opinion



**ORDERED in the Southern District of Florida on June 03, 2009.**

**Laurel M. Isicoff, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                            Case No. 07-21016-BKC-LMI

SUNDALE, LTD.,                                    Chapter 11

       Debtor.
_____/

### ORDER ON OCEAN BANK'S ENTITLEMENT TO DEFAULT INTEREST IN RESPECT OF ITS CLAIM [1]

This matter came before me on request of Ocean Bank for temporary allowance of its claim for voting and estimation purposes (DE #895) and the objection of the Debtor, Sundale, ltd. ("Sundale" or "Debtor") to the motion (DE #1241). In making this decision I have also reviewed the memoranda of law (DE #986 and #1141) filed by Ocean Bank as well as the memorandum of law (DE #1103) filed by the Debtor, Sundale.[2]

Ocean Bank claims it is entitled to default interest from as early as May 22, 2007, the date that KRH Ltd., the co-guarantor of the Ocean Bank Loan, filed bankruptcy. Sundale argues that Ocean Bank is not entitled to default interest at all.

---

[1] This Order reduces to writing (and adds some formality) to my oral ruling of March 25, 2009.

[2] A detailed factual background of this case is available in *In re Sundale, Ltd.,* 400 B.R. 890 (Bankr. S.D. Fla. 2009) (the "Trustee Order"). Capitalized terms not defined in this Order will have the meaning set forth in the Trustee Order.

I have already held that, for purposes of estimation, default interest, to the extent that Ocean Bank is entitled to charge default interest, shall run from December 10, 2007, the date Ocean Bank sent Sundale the notice of default. The issue before me is whether Ocean Bank should be entitled to charge default interest at all. I have previously advised the parties that my ruling on this legal issue will apply not only for purposes of the estimation motion, but also to the objection to the Ocean Bank claim that has been filed by Sundale.[3]

Sundale argues that Ocean Bank is not entitled default interest at all because

a. Ocean Bank's claim of default rate of interest[4] is an unenforceable penalty under Florida law and therefore not allowable under 11 U.S.C. §506(b); and

b. Even if I should find the default interest rate reasonable (which, as I will get to, is not the issue), I should nonetheless not enforce the default interest based on a balancing of the equities of the case under federal law.

For the reasons set forth in this Order, I find that Ocean Bank's claim of default interest is enforceable under Florida law and therefore enforceable under section 11 U.S.C. § 506(b). Moreover, equitable considerations do not, under Florida law, and cannot, under federal law, modify Ocean Bank's entitlement to default interest on its claim.

In *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989), the United States Supreme Court first reviewed section 506(b). In that case, the issue was the enforceability of post-petition interest charges for a non-consensual, oversecured claim. In ruling that non-consensual interest on such a claim was allowed, the Supreme Court held that "[r]ecovery of post-petition interest [under section 506] is unqualified," as opposed to allowance of fees costs and charges, which must be reasonable and allowed pursuant to agreement. 489 U.S. at 241. The Supreme Court

---

[3] FACE has asked that this ruling also apply to its claim for default interest. Since the law does not change, this ruling will apply to the pending objection to FACE's claim as well.

[4] The Debtor also argues that Ocean Bank's claim of late charges and late fees are equally unenforceable, but Ocean Bank has stated it is not seeking late charges or late fees, so there is no need to address this argument.

expressly held that when Congress enacted section 506(b) it implicitly, although not explicitly, repudiated the balancing of equities analysis espoused by the Supreme Court in *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156 (1946). *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. at 248.

The Eleventh Circuit has repeatedly echoed the Supreme Court's holding in cases dealing with section 506(b). In *Equitable Life Assurance Society v. Sublett*, 895 F.2d 1381 (11th Cir. 1990), the Eleventh Circuit considered the bankruptcy court's disallowance of certain interest requested by a lender arising out of a promissory note secured by real property. In reversing the bankruptcy court decision and the district court's affirmance of that decision, the court noted that the bankruptcy court's decision, based on the equitable balancing of the *Vanston Bondholders* case, was "fatally flawed." The court based its holding on the Supreme Court ruling in *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988), in which the Supreme Court specifically held that a bankruptcy court may only exercise its equitable rights consistent with the provisions of the Bankruptcy Code. Since section 506(b) specifically allows oversecured creditors interest on account of their claims, the court held that, to the extent *Vanston* directed a different result, *Vanston* had been superseded. The Eleventh Circuit also noted that, even were *Vanston* to have continuing viability, "*Vanston* recognized the principle – long established under pre-Code bankruptcy laws – that claims for post-petition interest should be allowed in full where the debtor's estate ultimately proves to be solvent. . . ." 895 F.2d at 1386. In the *Sublett* case there was no issue that the lender was oversecured and the estate was solvent. The case was remanded to the bankruptcy court solely for determination of whether the interest sought was actually allowed under the applicable loan documents, an issue that had not been directly addressed in the lower court opinion.

While there appears to be some confusing reference in *Sublett*, in dicta, to reasonableness, any such confusion was resolved by the Eleventh Circuit in *Orix Credit Alliance, Inc. v. Delta Resources, Inc.*, 54 F.3d 722 (11th Cir. 1995) and *Welzel v. Advocate Realty Investments, LLC*, 275 F.3d 1308 (11th Cir. 2001).  In *Delta Resources*, the court considered whether an oversecured creditor is entitled to payment of post-petition interest as adequate protection payments in order to preserve the value of its equity cushion.  Although answering that question in the negative, the Eleventh Circuit did note, citing *Ron Pair* and *Sublett*, that "it seems beyond preadventure that a creditor's right to recover postpetition interest on its oversecured claim pursuant to 11 U.S.C. § 506(b) is virtually 'unqualified.'" 54 F.3d at 727.  In *Welzel*, the court considered the reasonableness qualifier in section 506(b) as it applies to attorney fees. First, the Eleventh Circuit noted that the amount and validity of claims is determined through reference to state law. Second, the Eleventh Circuit wrote:

> Congress has shown that when it wants to exempt a particular set of items from the reasonableness standard, it does so explicitly.  With regard to interest payments on oversecured claims, § 506(b) conspicuously leaves out the adjective "reasonable," in contrast to the explicit reference to "reasonable fees, costs or charges."  This indicates that Congress, by using "reasonable" with respect to one set of items but not another, acted purposefully in deciding whether to include or exclude the reasonableness standard.

275 F.3d at 1314.  Thus, the court held that, in determining the allowability of attorney fees, the court had to consider the allowability of the claim under state law, and then further whether the claim met the reasonableness standard for purposes of allowance under section 506(b). Conversely, in considering the allowability of interest under section 506(b) (that is, the secured status of the interest claim) the inquiry is limited to state law.  I would also note that Congress amended section 506(b) in 2005 to add an additional modifier ("or State Statute") to charges other than interest, but did not change the unqualified allowance of interest notwithstanding the

4

case law on this issue. Had Congress wanted to change the statute to qualify the allowance of interest under section 506(b) it could have done so in 2005.

There is no dispute that the allowance of a claim, in the absence of a specific Bankruptcy Code provision to the contrary, as noted by the Eleventh Circuit in *Welzel*, is governed by state law. As stated by the Supreme Court time and again:

> Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code. . . The "basic federal rule" in bankruptcy is that state law governs the substance of claims.

*Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 19 (2000) (*citing Butner v. U.S.*, 440 U.S. 48 (1979)). *See also Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 451 (2007) ("[W]hen the Bankruptcy Code uses the word 'claim' –which the Code itself defines as a 'right to payment,' 11 U.S.C. § 101(5)(A) – it is usually referring to a right to payment recognized under state law.")

While the Debtor is correct that there are several cases under Florida law regarding the unenforceability of unreasonable fees and charges improperly disguised as penalties, there are no such Florida cases with respect to a lender's entitlement to default interest. Nor are there any Florida cases equating default interest with fees and charges under agreements such that it would be appropriate to analogize the treatment. Indeed, the Debtor concedes this in its memorandum. The cases that are cited by the Debtor do not inform the issue before me because, in each instance, either the case was based on a state law, other than that of Florida, that limited a lender's entitlement to default interest, *see, e.g., In re Timberline Prop. Dev., Inc.*, 136 B.R. 382 (Bankr. D.N.J. 1992), or the case relied on the balancing of equities approach of *Vanston Bondholders*, *see, e.g. In re DWS Inv., Inc.*, 121 B.R. 845 (Bankr. C.D. Cal 1990).which

approach, as I have already discussed, the Supreme Court has specifically held is no longer appropriate with respect to an oversecured creditor's entitlement to interest.

Florida law expressly recognizes a lender's right to charge default interest if the underlying loan documents so provide. *See, e.g. Smiley v. Manufactured Hous. Assoc. III*, 679 So.2d 1229 (Fla. 2d DCA 1996); *THFN Realty Co. v. Kirkman/Conroy Ltd.*, 546 So.2d 1158 (Fla. 5th DCA 1989); *Haddock v. Marlin*, 458 So.2d 848 (Fla. 5th DCA 1984); *Bratcher v. Wronkowski*, 417 So.2d 1132 (Fla. 5th DCA 1982); *Conn. Mut. Life Ins. Co. v. Fisher*, 165 So.2d 182 (Fla. 3d DCA 1964). Moreover, a trial court may not alter that contractual right based on equitable considerations even though mortgage foreclosures in Florida are equitable proceedings. In reversing a trial court's denial of a lender's claim of default interest based on the trial court's finding that the lender acted unreasonably because the lender would not give the borrower a partial release of mortgage (and therefore the borrower stopped making mortgage payments, hence "causing" the default), the Second District Court of Appeal wrote:

> We recognize that mortgage foreclosure is an equitable remedy. However, in determining whether to grant equitable relief, the trial court cannot look solely to the result but must apply rules which confer some degree of predictability on the decision-making process. [*David v. Sun Fed. Sav. & Loan Ass'n*, 461 So.2d 93, 95 (Fla. 1984).] Only under certain clearly defined circumstances, none of which are present in this case, may a court of equity refuse to foreclose a mortgage. Furthermore, in determining whether to grant the equitable relief of foreclosure, the trial court is not at liberty to modify terms of the note and mortgage that are unambiguous and undisputed. In this case, the note provided for an original interest rate of 8.5 percent per annum and a default rate not to exceed 18 percent per annum that would apply "if default be made in the payment of any of the sums or interest mentioned herein or in said mortgage or in the performance of any of the agreements contained herein or in said mortgage." Given the facts of this case, we hold that, even if the [lender] had breached the independent covenant pertaining to partial releases, the trial court was without authority to modify the terms of the note and mortgage by failing to give effect to the default rate provision.

*Smiley v. Manufactured Hous. Assoc. III*, 679 So.2d at 1232 (internal citations omitted).

In sum, Ocean Bank's contractual right to default interest is enforceable under Florida law, and, because Ocean Bank's state law right is not modified by any Bankruptcy Code provision, and since this Court may not use its equitable powers to alter Ocean Bank's state law contract right either under Florida law or federal law, Ocean Bank is entitled to default interest on account of its claim. Moreover, even if *Vanston* had continuing viability, despite direct contrary rulings by the United States Supreme Court and the Eleventh Circuit, the Debtor has repeatedly claimed that all creditors will be paid in full, and, therefore, under *Vanston's* equity standard Ocean Bank would nonetheless be entitled to its default interest.

As I ruled previously, for purposes of estimation only, default interest shall run from December 10, 2007. For purposes of final claim allowance, default interest shall run from such date as I determine based on the evidence presented at the trial on the Ocean Bank claim objection. However, nothing in this ruling is intended to or shall limit the Debtor's right to bring its counterclaim against Ocean Bank.

Because of this ruling I find there is no need to have an evidentiary hearing on the "purpose" of the default interest or to consider what are Ocean Bank's actual costs or losses with respect to the allowability of default interest. These facts are not relevant because Florida law views contractual default interest differently than it does other charges that courts may scrutinize to determine whether such charges are penal in nature. Equity cannot alter those rights.

###

Copies furnished to:
Greg Grossman, Esq.
Peter Russin, Esq.

Attorney Grossman is directed to serve a conformed copy of this Order on all interested parties and file a certificate of service with the Clerk of the Court.