**Tagged Opinion**

ORDERED in the Southern District of Florida on Feb 13, 2012

Laurel Myerson Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                              CASE NO. 07-21016-BKC-LMI

SUNDALE, LTD. and KENDALL HOTEL                     Chapter 11
AND SUITES, LLC,                                    Jointly Administered

          Debtors.
_____/

## MEMORANDUM OPINION ON
## ORDER GRANTING CREDITORS' MOTION TO CONVERT

This matter came before me on a request to convert case to Chapter 7 filed by Florida Associates Capital Enterprises and Ocean Bank (ECF #1815).[1] The issue that I must decide is whether and when a bankruptcy court may convert a chapter 11 case to a chapter 7 case after the plan has been confirmed and after substantial consummation, and, if so, what is the impact of

---

[1] The request to convert was argued on November 10, 2010. At the request of the Reorganized Debtors (hereinafter defined) and Ocean Bank, one of the Moving Creditors, I delayed issuing my ruling to give the Reorganized Debtors an opportunity to sell or refinance the property pursuant to a settlement with Ocean Bank (ECF #1850). The Reorganized Debtors were unable to find any such opportunity prior to the deadline in the settlement agreement, and therefore, on July 7, 2011 I issued my oral ruling and the case was converted to a case under chapter 7 (ECF #1875). This memorandum opinion is a more detailed version of my oral ruling.

that conversion on property that had been property of the chapter 11 bankruptcy case prior to conversion.

## FACTUAL BACKGROUND

On December 12, 2007, Sundale filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). On January 30, 2008, Kendall Hotel & Suites, LLC ("KHS") (collectively, Sundale and KHS shall be referred to as the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On February 5, 2008, I entered the order jointly administering the Sundale and KHS cases (ECF #80). During the course of their jointly administered cases, the Debtors operated their businesses as debtors-in-possession pursuant to 11 U.S.C. §§1107 and 1108. On March 7, 2009, the Debtors filed their Second Amended Chapter 11 Plan of Reorganization (the "Plan") (ECF #1150). The confirmed Plan substantively consolidated the Debtors' estates. Thus, hereinafter KHS and Sundale will be referred to as the "Reorganized Debtors." The effective date of the Plan, as amended by the Order Confirming Debtors' Second Amended Chapter 11 Plan of Reorganization, entered May 26, 2009 (ECF #1508) (the "Confirmation Order"), and the Order Granting in Part and Denying in Part Holiday Hospitality Franchising, Inc.'s Motion to Amend and Clarify Order Confirming Debtors' Second Amended Chapter 11 Plan of Reorganization (ECF #1550) (collectively, the "Plan"), was July 10, 2009.

On August 2, 2010, the Reorganized Debtors filed an Emergency Motion for Entry of an Order Modifying the Second Amended Chapter 11 Plan of Reorganization and Confirmation Order to Allow Post-Petition Debtor-in-Possession Financing (the "Financing Motion") (ECF #1811). On August 5, 2010, Florida Associates Capital Enterprises, LLC ("FACE") and Ocean Bank filed their Objection to Sundale's Financing Motion (the "Objection") (ECF #1815). The

Objection included a request to convert the case to chapter 7 for cause, pursuant to 11 U.S.C. §1112(b)(4)(A)(B)(E) and (N). At the hearing on the Financing Motion (the "Hearing"), I denied the Reorganized Debtors' request to obtain financing and ruled that the Plan had been substantially consummated.[2] In addition, the Parties argued whether or not conversion to chapter 7 was in the best of interest creditors. The focus of the argument was whether any property of the Reorganized Debtors could be administered by a chapter 7 trustee, or stated differently, whether there would be any estate for a chapter 7 trustee to administer.

On August 19, 2010, I entered an order denying the Financing Motion (the "Order") (ECF #1820). Aside from denying the Financing Motion, the Order set a hearing to "hear and determine whether conversion of the above-captioned proceeding to Chapter 7 is in the best interests of creditors." At the request of the parties the ruling on this issue was delayed for several months.[3]

## ANALYSIS

Three bankruptcy sections are involved in the resolution of this issue: 11 U.S.C. §348, 11 U.S.C. §1112(b), and 11 U.S.C. §1141(b).

Section 1112 provides that the court shall convert a case under chapter 11 to chapter 7 or dismiss a chapter 11 case "whichever is in the best interests of creditors and the estate, for cause...." 11 U.S.C. §1112(b)(1).[4] Thus, in order to determine whether conversion is appropriate I must first find cause, and then second, determine what is in the best interests of creditors and the estate. The Reorganized Debtors argue that relief under section 1112 is not available because cause for such relief does not exist, and, moreover, conversion is not in the best interest of

---

[2] Having found the Debtors' Second Amended Chapter 11 Plan of Reorganization had been substantially consummated I need not consider whether and under what conditions a chapter 11 case may be converted post-confirmation but prior to substantial consummation.
[3] See Supra note 1.
[4] All parties agree that dismissal is not appropriate.

creditors since there will be no benefit to creditors. FACE and Ocean Bank (collectively the "Moving Creditors") argue to the contrary.

Cause includes "material default by the debtor with respect to a confirmed plan." 11 U.S.C. §1112(b)(4)(N). There is no dispute that the Plan is in material default. Nonetheless, the Reorganized Debtors previously advocated that a court cannot convert a chapter 11 case once substantial consummation has occurred even where a material plan default has occurred, but this argument is directly contradicted by the clear language of section 1112. Section 1112(b)(4) includes in its list of those matters that would constitute cause for dismissal or conversion a debtor's "inability to effectuate substantial consummation of a confirmed plan." 11 U.S.C. §1112(b)(4)(M). If a plan were in material default prior to substantial consummation, the plan could not, logically, be substantially consummated, since it is highly unlikely that a plan in material default could be substantially consummated. Thus, if section 1112(b)(4)(N) only applied before substantial consummation of a plan, subsection (M) would be superfluous. Moreover, there is nothing in the statute that restricts material default to an event occurring only prior to substantial consummation. "It is a cardinal principal of statutory construction that 'a statute ought, upon the whole, to be construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Nunally v. Equifax Information Services, LLC*, 451 F.3d 768, 773 (11th Cir. 2006) (quoting *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). Accordingly, I hold that a bankruptcy court may convert a chapter 11 bankruptcy case after substantial consummation of a confirmed bankruptcy plan, if the plan is in material default.[5]

This still leaves the issue of whether conversion of this case is in the best interests of creditors and the estate. The Reorganized Debtors argue that conversion is not in the best interest of creditors because there will be no assets for a chapter 7 trustee to administer. The

---

[5] *Accord In re Seaview Estates, Inc.*, 213 B.R. 427 (Bankr. E.D.N.Y. 1997).

~ 4 ~

Reorganized Debtors refer to several cases in support of their argument that, upon confirmation of the Plan, all estate assets revested in the Reorganized Debtors, and conversion will not revest assets in the chapter 7 bankruptcy estate. The Moving Creditors rely on another body of case law which holds that conversion of a case does revest assets in the estate subject to administration by a chapter 7 trustee. There is clearly a split among the courts on this issue, however, for the reasons set forth as follows I hold that conversion of a substantially consummated post-confirmation chapter 11 case to a chapter 7 case does not necessarily revest assets in the estate. Nonetheless, I find that conversion is still in the best interest of creditors.

A chapter 11 bankruptcy plan is considered a contract and its terms govern the post-confirmation relationship of the reorganized debtor and its creditors.[6] Once a chapter 11 bankruptcy plan is confirmed, the plan may only be modified prior to substantial consummation. 11 U.S.C. §1127(b). A confirmation order may only be revoked within 180 days after confirmation and only if the "order was procured by fraud." 11 U.S.C. §1144. In some instances, however, after substantial consummation, as is this case here, the reorganized debtor defaults under the confirmed plan, triggering the question, what are the remedies of the creditors? Obviously, if the plan includes certain remedies, those plan provisions will govern, at least in part, the rights of the creditors upon default.

In this case, the Plan specifically provides that, upon default, "[r]emedies of Creditors are limited to Allowed Claims against the Sundale Consolidated Debtor or the Reorganized Debtors, as the case may be. Creditors may enforce their remedies in the same manner as they would otherwise pursue damages for breach of contract or other actions arising out of the Sundale Consolidated Debtor, or the Reorganized Debtors, as the case may be, default." Plan at Article

---

[6] *United States v. Lincoln Savings Bank (In re Commercial Millwright Service Corp.)*, 245 B.R. 585, 590 (Bankr. N.D. Iowa 1998) ("Upon confirmation of the plan, all prior obligations and rights of the parties are extinguished and replaced by the plan.").

X(D). Clearly, then, the creditors may pursue state law remedies, which, in the case of the Moving Creditors, is pursuit of foreclosure of their liens on the property securing their claims against the Reorganized Debtors (the "Real Property").

Are these the only remedies to which the creditors are entitled? The Reorganized Debtors argue that the creditors are limited to the Plan remedies – pursuit of their remedies for breach of contract as the Plan provides. The Moving Creditors argue that, in addition to what the Plan provides, they may seek dismissal or conversion as provided by the Bankruptcy Code so long as I find the Bankruptcy Code remedies are appropriate.

There is nothing in the Plan that suggests that the default provisions of the Plan constitute the creditors' exclusive remedy upon default. Nothing in the Plan precludes the creditors from seeking conversion or dismissal of the case upon default under the Plan. But the question is, if the Reorganized Debtors are correct, that conversion will not revest the Real Property in the bankruptcy estate, is conversion nonetheless in the best interests of the creditors.

11 U.S.C. §1141(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtors." The Plan in this case provides that, upon confirmation, all of the Debtors' property,[7] including the Real Property,[8] vested in the Reorganized Debtors.[9] Unfortunately, nothing in the

---

[7] The Plan provides as follows: "[e]xcept as otherwise provided in the Plan or Confirmation Order, title to all of the Debtor's assets including any and all causes of action which may exist against third parties will revest in the Debtors, respectively, or the Sundale Consolidated Debtor (if I approve Substantive Consolidation), free and clear of all claims and interests, except as otherwise expressly stated in the Plan, on the Effective Date." Plan at Article V(F).
[8] There is some property encumbered by the Moving Creditors' liens that is not owned by the Reorganized Debtors. The Confirmation Order specifically addresses the treatment of that property upon default under the Plan.
[9] Counsel for FACE argued that there is Plan language that suggests that the Real Property did not vest in the Reorganized Debtors but rather in the Sundale Consolidated Debtors. While I understand the semantic razor's edge argued by counsel, I agree with the Reorganized Debtors that the distinction is without a difference, and related more to the issue of whether the Debtors would be substantively consolidated upon confirmation. Since substantive consolidation did occur, the distinction is meaningless for purposes of the issue before me.

Plan or the Confirmation Order addresses the disposition of the Real Property if the Plan is unsuccessful.

As I already noted, when a plan is silent as to the vesting of assets upon conversion after default, courts disagree whether and which assets of a reorganized debtor will revest in the bankruptcy estate upon post-confirmation conversion. This debate turns primarily on the interpretation of 11 U.S.C. §348(a). Section 348(a) provides that, upon conversion of a chapter 11 case to a chapter 7 case, the conversion order "constitutes an order for relief under the chapter to which the case is converted," however, subject to exceptions not applicable here, conversion "does not effect a change in the date of… the commencement of the case…." 11 U.S.C. §541(a)(1) provides that property of the estate is "all legal or equitable interests of the debtor in property as of the commencement of the case."

Some courts have interpreted section 348 to mean that only property owned by the debtor when the original case was commenced will revest in the estate upon conversion of a substantially consummated chapter 11 case. *Smith v. Lee (In re Smith)*, 201 B.R. 267 (D. Nev. 1996), *aff'd*, 141 F.3d 1179 (9th Cir. 1998). Other courts have interpreted this provision to mean that any property held by the reorganized debtor on the confirmation date revests in the chapter 7 estate. *See Carey v. Flintridge Lumber Sales, Inc. (In re RJW Lumber Co.)*, 262 B.R. 91 (Bankr. N.D. Ca 2001) (court held avoidance actions revested in the chapter 7 trustee). Still other courts have held that in addition to assets that vested in the reorganized debtor on the confirmation date, assets generated post confirmation vest in the chapter 7 estate as well. *See Bezner v. United Jersey Bank (In re Midway, Inc.)*, 166 B.R. 585, 590 (Bankr. D. N.J. 1994). In *Bezner* the court held that the debtor's post-confirmation pre-conversion accounts receivable became property of the chapter 7 estate upon conversion. While the court recognized that, pursuant to section 348(a),

conversion of the chapter 11 case to chapter 7 "does not change the commencement date of the case and therefore does not technically create a new estate...", the court nonetheless held that a strict reading of these Code provisions would mean there would be no assets to distribute upon conversion, and therefore "ignores the provisions of chapter 7 providing for distribution of estate property." *Id.* at 590.

A slightly different approach was used by the Ninth Circuit in *Pioneer Liquidating Corp. v. U.S. Trustee (In re Consolidated Pioneer Mtg. Entities)*, 264 F.3d 803 (9th Cir. 2001). In *Pioneer* the court held that the provisions in the failed but confirmed chapter 11 plan which provided for distribution of proceeds to investors and the bankruptcy court's continuing jurisdiction "to oversee [the] implementation of the plan..." should be interpreted as plan provisions, albeit not specific, that revested assets in the estate upon conversion. *Id.* at 807.

Conversely, other courts have examined 11 U.S.C. §1141 and have held that conversion does not rescramble the egg. An extreme view is reflected in *In re TSP Industries, Inc.*, 117 B.R. 375 (Bankr. N.D. Ill. 1990). In *TSP* the court held that, in the absence of a plan provision, no assets revest when a case is converted to a chapter 7 case post-confirmation and therefore no estate is created upon conversion. "There are no provisions in the Bankruptcy Code that provide for the recreation of an estate upon the post-confirmation conversion of a confirmed chapter 11 to a case under chapter 7. Put another way, once property has vested in the Debtor, conversion will not revest that property in the estate." *Id* at 377-378. *See also Pauling Auto Supply Inc.*, 158 B.R. 789 (Bankr. N.D. Iowa 1993) (the court questioned in dicta whether there can be an estate upon a post-confirmation conversion if there are no estate assets to distribute).

Other courts have held that, while an estate is created upon conversion, the assets that vested in the debtor upon confirmation do not revest in the chapter 7 estate. *See Carter v.*

*Peoples Bank & Trust Co. (In re Carter)*, 201 B.R. 838 (Bankr. S.D. Ala.1996). In holding that conversion of a case post-confirmation does not "undo" the plan, the court noted that once assets vest in a reorganized debtor the assets fall outside the bankruptcy court's jurisdiction, as the assets are no longer property of the estate. *Id.* at 849-50. Moreover, the court noted, post-confirmation conversion of a case is neither revocation nor modification, the timing for each of which is strictly limited under the Bankruptcy Code, and therefore the consequences of conversion must necessarily be different from the consequences of revocation or modification or the revocation and modification provisions are rendered superfluous. *Id. Accord K&M Printing,* 210 B.R. 583 (Bankr. D. Ariz. 1997) (the court recognized that there can be an estate post-conversion but if there are no assets to administer conversion may not be in the best interests of the estate or the creditors); *In re Smith*, 201 B.R. 267, 274 (D. Nev. 1996) (to say there can be no conversion once there is a confirmed plan would render portions of section 1112 a nullity).

While I believe the better and more practical approach is to hold that at least property of the estate at the time of confirmation of a plan vests in a chapter 7 trustee upon post-confirmation conversion, it is not my role to legislate. When a statute is unambiguous the court must interpret the statute "'according to its terms.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (citations omitted). Moreover, "[t]he Supreme Court and this Court have warned on countless occasions against judges 'improving' plain statutory language in order to better carry out what they perceive to be the legislative purposes." *In re Bracewell*, 454 F.3d 1234, 1240 (11th Cir. 2006). And while, as I already noted above, statutes should be interpreted to give every part meaning, I do not agree with those courts, such as the *Bezner* court, that hold the necessary consequence of application of this rule is that estate property revests in the estate upon post-confirmation conversion. I believe the court in *TSP* conflates two separate concepts.

Whether an estate is created upon conversion is different than whether that estate will have assets.[10] I find that, contrary to the *TSP* court's holding, section 348 explicitly contemplates the creation of an estate. However, I agree, as do other courts, that, in the absence of a plan provision to the contrary, conversion does not revest property in the estate that vested in the reorganized debtor upon confirmation. I reluctantly hold that, in the absence of an express provision in the plan or confirmation order to the contrary, upon conversion, assets that vested in the reorganized debtor upon substantial consummation of a confirmed chapter 11 plan do not revest in the estate to be administered by the chapter 7 trustee.

But this does not end the inquiry. I must determine whether, nevertheless, conversion in this case is appropriate. I do find that, in fact, conversion would be in the best interests of creditors. Mr. Scutieri has drained the limited resources of these Reorganized Debtors, as well as his personal resources pledged to insure the feasibility of the Plan, and, more importantly, at least until this matter first came up for ruling, appears to have spent the majority of his time and energy litigating with Ocean Bank, FACE, Raymond Chambers,[11] and, to a lesser extent, Williams Paving Co.,[12] rather than seeking to joint venture, sell, or refinance, as the Plan requires. I know Mr. Scutieri claims his more recent efforts have generated some interest, but as of the date of the hearing at which I announced my ruling nothing had ripened from hope to probability.

---

[10] Bankruptcy estates exist even when there is no property of the estate; any chapter 7 trustee with a "no asset" case will confirm this.
[11] For a complete description of the relationship between Mr. Scutieri, Raymond Chambers, and FACE *see Florida Associates Capital Enterprises, LLC v. Sundale, Ltd., et al.*, Case No. 08-1312-BKC-LMI-A, Findings of Fact and Conclusions of Law with Respect to Final Judgment, ECF #487, October 8, 2010.
[12] I note that the Reorganized Debtors and Williams Paving Co. resolved their differences around the same time the Reorganized Debtors settled with Ocean Bank.

While there may be little or nothing of value for unsecured creditors in light of the material defaults under the Plan,[13] it is possible that a chapter 7 trustee will have a more objective view to resolution of the conflicts with OceanBank[14] and FACE, which resolution could inure to the benefit of the unsecured creditors since all issues relating to claims administration lie only with the trustee. Moreover, to the extent that the chapter 7 trustee agrees with Mr. Scutieri's position regarding Ocean Bank, FACE, or both, the trustee's involvement may nonetheless facilitate resolution of these disputes, even if it is only to move the litigation forward without unnecessary distractions and with a less jaundiced eye. Moreover, a trustee has, subject to any statutes of limitation, the ability to bring avoidance actions, as well as any other causes of action that may only be exercised by an estate fiduciary.[15]

Accordingly, I find that conversion is in the best interest of the creditors.[16]

### 

Copies furnished to:
Peter Russin, Esq.
Gregory Grossman, Esq.
James Gassenheimer, Esq.
Joel Tabas, Esq.

*Attorney Gassenheimer shall serve a copy of this Order upon all interested parties and file a Certificate of Service with the Clerk of Court.*

---

[13] Breach of contract will be a remedy of little use to general unsecured creditors.

[14] The Ocean Bank loan was sold to Samjaz Welleby, LLC, and now all rights and disputes relating to the Ocean Bank loan are held by, and being dealt with by, Samjaz Welleby, LLC (albeit with the same lawyer).

[15] While I recognize the Plan provided that all causes of action vested in the Reorganized Debtors upon consummation, since certain causes of action can only be litigated by an estate fiduciary, by operation of law these causes of action must necessarily have revested in the chapter 7 estate, since, upon conversion, the Reorganized Debtors lost their status as estate fiduciaries.

[16] Notwithstanding conversion and plan default, the Plan assets are still subject to the Plan provisions, meaning, for example, that the Plan assets remain liable for payment of the allowed unsecured claims. As a result holders of unsecured claims might be able to file an involuntary bankruptcy case against the Reorganized Debtors based on the Plan default. *See In re Troutman Enterprises, Inc.*, 253 B.R. 8 (6th Cir. BAP 2000).