

**ORDERED in the Southern District of Florida on November 9, 2012.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| In re: | ) CASE NO.  07-21016-BKC-RAM |
|  | ) CASE NO.  08-11050-BKC-RAM |
| SUNDALE, LTD., KENDALL HOTEL AND | )(Substantively Consolidated) |
| SUITES, LLC, | ) |
|  | ) |
| Debtors. | ) CHAPTER 7 |
|  | ) |
|  | ) |

**ORDER GRANTING IN**
**PART MOTION FOR FEES AND COSTS**

The Court conducted a hearing on June 14, 2012, on Florida Associates Capital Enterprises' ("FACE") Motion for Fees and Costs Pursuant to 11 U.S.C. § 506(b) (the "Fee Motion") [DE# 1910]. Following the hearing, on June 21, 2012, the Court entered its Order Requesting Further Briefing on Fee Motion (the "June 21st Order") [DE# 1978]. That Order invited further briefing by FACE, the Debtor and Samjaz Welleby, LLC ("Samjaz")

on certain jurisdictional issues regarding appellate fees and state court foreclosure fees.

The June 21st Order also referred to the objections to specific time entries Samjaz had noted in the margins of copies of the invoices from FACE's counsel, Berger Singerman. The Order requested Samjaz to submit another copy of the Berger Singerman invoices with its objections marked in the margin and with the dollar amount of the requested reduction noted next to each objection.

In response to the June 21st Order, the Court received supplemental memoranda from FACE [DE# 1983], the Debtors [DE# 1985], and Samjaz [DE# 1984]. The Court has also received the Berger Singerman invoices annotated with Samjaz's objections and requested reductions (the "Samjaz Annotated Invoices").[1]

The Court has completed its review of the record. This includes a review of the enormous docket in the main case, a review of the lengthy docket in Adv. No. 08-1312 (the "Face Adversary"), and the district court docket in the appeal of the judgment in the FACE Adversary, Case No. 1:11-cv-20635-KAM. The Court has also reviewed the Fee Motion and the several memoranda

---

[1]On September 13, 2012, after this matter was taken under advisement, Samjaz filed its Notice of Withdrawal of its (A) Objection to Motion for Fees and Costs and (B) Response to Order Requesting Further Briefing on Fee Motion [DE# 1986]. The withdrawal of Samjaz's objection was not relevant to the Court's determination of this contested matter.

relating to the Fee Motion, including FACE's Supplement to [Fee Motion] [DE# 1923], FACE's Memorandum of Law in Support of [Fee Motion] [DE# 1935], Debtors' Response to [Fee Motion] [DE# 1915], Debtors' Supplemental Response to [Fee Motion] [DE# 1931], and Samjaz's Objections to Fee and Cost Request of FACE [DE# 1929].

The Court has also considered the arguments of counsel for the Debtors, FACE and Samjaz, presented at the June 14, 2012 hearing, and the post-hearing memoranda described above submitted by these same three parties.  Finally, the Court has carefully reviewed all of the Berger Singerman invoices underlying the Fee Motion, and considered the Samjaz Annotated Invoices.

## The Fees and Costs Requested

In its Fee Motion [DE# 1910] and Supplement to Fee Motion [DE# 1923], FACE seeks an award of fees and costs reflected in invoices issued beginning on January 9, 2008, and ending with an invoice dated November 14, 2011.  These invoices include fees and costs incurred over the nearly four-year period starting from the inception of the case in December 2007 through October 31, 2011.

The total fees sought are $3,215,752.55 and the total costs requested are $766,424.40 for a total § 506(b) claim of $3,982,176.95.  In its Memorandum of Law in Support of Fee

Motion [DE# 1935], FACE agreed to voluntarily reduce its fee claim by $81,860.50 and its cost request by $10,000 representing the total amount of fees and costs it believes was incurred in prosecuting the safety issues presented in the Trustee Motion, discussed later in this Order. Based upon this voluntary reduction, the starting point is $3,133,892.05 in fees and $756,424.40 in costs for a total § 506 claim of $3,890,316.45.

## The Issue

FACE holds a mortgage on the Debtors' property. Its Fee Motion alleges that the property securing its claim has a value in excess of its claim, and therefore, it seeks attorney's fees under its loan documents pursuant to 11 U.S.C. § 506(b). The loan documents entered into on September 7, 2001, between FACE, as lender, and the Debtors and Philip Scutieri, as borrowers, include promissory notes with the following attorney's fee provision:

> All parties liable for the payment of this Note agree to pay the Lender hereof reasonable attorney's fees for the services and expenses of counsel employed after maturity or default to collect this Note (including any appeals relating to such enforcement proceedings), or to protect or enforce the security hereto, whether or not suit be brought.

September 7, 2001 renewal promissory note, quoted in FACE's Supplemental Memorandum [DE# 1983, p. 2].

4

In its Supplemental Response, the Debtor argues that the above-quoted provision in the loan documents does not refer specifically to fees and costs in bankruptcy and therefore does not entitle FACE to recover any of the fees and costs sought in the Fee Motion.  The Court addressed this issue at the June 14th hearing and, in a bench ruling, rejected Debtor's argument:

> I find the language in the loan documents sufficient to encompass bankruptcy fees and reject any holdings that language similar to this would not encompass bankruptcy fees.  So the only issue is the reasonableness of the fees and whether the services and costs that are reflected in the invoices were necessary and appropriate to collect on the note and preserve the right to collect on the note.

Transcript of June 14, 2012 hearing [DE# 1980, p. 9].

Neither the Debtor nor Samjaz contest the fact that FACE is oversecured.  Thus, the only issue before the Court is the reasonableness of the fees incurred by FACE in the main case, and in pursuit of, and later appeal of, a judgment in the FACE Adversary filed on May 1, 2008, to determine the validity, priority and extent of its lien against the Debtors' property.

### Chronology of Significant Events in the Main Case and FACE Adversary

The parties are intimately familiar with the long and tortured history of this case and that history will not be

repeated in great detail here.   The significant highlights follow.

December 12, 2007 - Sundale, Ltd. ("Sundale"), filed its Chapter 11 petition.

January 24, 2008 - FACE filed its Motion [of FACE] for Determination that the Captioned Case is a Single Asset Real Estate Case ("SARE Motion") in the Sundale case [DE# 57].

January 30, 2008 - Kendall Hotel and Suites ("KHS") filed its Chapter 11 petition.   The two cases were administratively consolidated on February 5, 2008 [DE# 80].[2]

February 7, 2008 - Debtors file their Response to SARE Motion [DE# 86] contesting the SARE allegation and noting that "Debtor highly contests that it owes FACE any money, let alone that FACE holds a bona fide secured claim."

March 10, 2008 - The SARE Motion is granted [DE# 174].

April 25, 2008 - FACE and the "Codina Parties," as defined in the motion, file Creditors' Joint Motion for Appointment of a Chapter 11 Trustee or in the Alternative an Examiner (the "Trustee Motion") [DE# 243].

May 2, 2008 - FACE files the FACE Adversary .

---

[2]The two debtors were substantively consolidated in the Chapter 11 plan discussed later in this Order.   Therefore, this Order will sometimes refer to the pre-confirmation debtors as "Debtors" and the consolidated reorganized debtor as the singular "Debtor."

May 27, 2008 - Trial on the Trustee Motion begins.

June 3, 2008 - Second day of trial on the Trustee Motion.

October 27-30, 2008 - Third through sixth day of trial on the Trustee Motion.

December 5, 2008 - Debtors file their Plan [DE# 817] and Disclosure Statement [DE# 816].

December 9 and 11, 2008 - The Trustee Motion hearing concludes after the seventh and eighth day of trial.

January 6, 2009 - Disclosure hearing.

January 16, 2009 - Order Denying Creditors' Motion to Appoint a Chapter 11 Trustee or in the Alternative an Examiner [DE# 906].

January 21, 2009 - Debtors file their Amended Plan [DE# 921] and Amended Disclosure Statement [DE# 920].

January 22, 2009 - The Court enters its Order Approving Disclosure Statement and Setting Hearing on Confirmation of Plan (for April 13, 2009) [DE# 932].

March 2, 2009 - Debtors file their Second Amended Disclosure Statement [DE# 1126] and Second Amended Plan [DE# 1127].

March 7, 2009 - Debtors file their Final Second Amended Plan [DE# 1150] and Final Second Amended Disclosure Statement [DE# 1151].

May 26, 2009 - The Court enters its Order Confirming Debtors' Second Amended Chapter 11 Plan ("Confirmation Order") [DE# 1508]. The Confirmation Order amends the previously proposed treatment of the FACE claim by requiring interest and attorneys fees to be amortized and paid during the term of the plan. The Confirmation Order also requires the Debtors to pay $2.5 million into a reserve account to cover shortfalls during the 36 month plan period.

August 2, 2010 - The reorganized Debtor files an emergency motion to modify plan and to borrow $2.0 million to continue operations. The motion seeks authority to grant the new lender a senior lien which would prime the existing first and second liens of Ocean Bank and FACE [DE# 1811].

August 19, 2010 - The Court denies the motion to modify and sets a hearing to consider conversion of the case to Chapter 7 [DE# 1820].

October 8, 2010 - The Court enters its 46-page findings and conclusions in the FACE Adversary [DE# 487 in 08-1312].

November 12, 2010 - The Court enters its final judgment in favor of FACE and against Sundale in the FACE Adversary in the amount of $6,394,595.04 retaining jurisdiction to determine fees and costs under § 506(b) [DE# 520 in 08-1312]. The judgment also rules in favor of FACE and against the Debtors on all counts of the Debtors' counterclaim.

December 28, 2010 - After Debtor defaults under the confirmed plan, FACE files a foreclosure case against the reorganized Debtor in Circuit Court, Miami-Dade County, Case No. 10-64400-CA-15 (the "Foreclosure Case").

February 24, 2011 - Debtors file an appeal of the FACE Adversary Judgment. The appeal is assigned to District Judge Marra, Case No. 1:11-cv-20635-KAM (the "District Court Appeal").

July 14, 2011 - The Court converts these cases to cases under Chapter 7 [DE# 1875].

September 28, 2011 - FACE files the Fee Motion.

February 13, 2012 - Judge Isicoff recuses and the case is assigned to the undersigned judge [DE# 1959].

February 14, 2012 - The District Court affirms the judgment entered in the FACE Adversary [DE# 46 in the District Court Appeal].

## Foreclosure Fees and Appellate Fees

Before addressing the reasonableness of the fees for various categories of services, the Court will address the two issues subject of the supplemental memoranda, namely, whether this Court has, and if so, should exercise jurisdiction to award fees incurred in the Foreclosure Case filed by FACE after the Debtors defaulted under their plan and fees incurred in defending the Debtors' appeal of the judgment FACE obtained in the FACE Adversary.

In its Supplemental Memorandum [DE# 1983], FACE acknowledges that fees incurred in the Foreclosure Case should be determined in the state court. In fact, FACE states that it has not included foreclosure case fees in the Fee Motion. Thus, the jurisdictional issue regarding foreclosure fees is moot.

The fees incurred in defending the appeal of the judgment in the FACE Adversary are part of the Fee Motion. In their supplemental memoranda, the Debtors and Samjaz concede that there are no cases finding that the district court has exclusive jurisdiction to award fees incurred in an appeal. Nevertheless, they urge the Court not to exercise jurisdiction to award these fees.

This Court agrees that fees incurred on appeals generally should be awarded by the appellate court. However, in the context of the Fee Motion in this case, the Court finds that it has, and should exercise, jurisdiction to award appellate fees. As urged by FACE, adjudicating the Fee Motion is part of the Court's core jurisdiction to determine FACE's claim. Part of the claim was determined by Judge Isicoff's judgment in the FACE Adversary. Judge Isicoff retained jurisdiction to consider the remaining part of the claim, namely fees and costs allowable under the loan documents and § 506(b):

> The Court retains jurisdiction over the parties and subject matter of this action. The Court further retains

> jurisdiction to hear and determine
> FACE's right to attorney's fees and
> costs pursuant to 11 U.S.C. § 506, the
> Loan Documents and as the prevailing
> party, and to award interest on the pre-
> effective date capitalized amount of the
> attorney's fees award and to enforce the
> terms of this Final Judgment.

Final Judgment in FACE Adversary [DE# 520, p. 4].

Finding and exercising jurisdiction to award appellate fees is also supported by the text of § 506(b) which does not limit fees to only those fees incurred in the bankruptcy court, but instead refers to "reasonable fees, costs, or charges provided for under the agreement ... under which such claim arose." And, under the fee provision in the loan documents, quoted earlier in this Order, FACE is specifically entitled to fees for "any appeals relating to such enforcement proceedings" [DE# 1983, p. 2].

Thus, this Court has jurisdiction and will exercise its jurisdiction to award appellate fees as part of this Order on the Fee Motion.

### Reasonableness of Fees

To determine whether an oversecured creditor's request for attorney fees under 11 U.S.C. § 506(b) is reasonable, bankruptcy courts employ the federal lodestar approach. *In re Reorganized Lake Diamond Associates, LLC*, 367 B.R. 858, 875 (Bankr. M.D. Fla. 2007). "Under the lodestar approach, courts consider the

number of hours of service reasonably devoted to the case multiplied by the attorneys' reasonable rates, and reduced or enhanced according to the twelve-factor test enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Id.* (citations omitted). The factors listed in *Johnson* are (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. "The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).

In the context of fees incurred to protect a secured creditor's interest in collateral and right to payment of its claim, "[r]easonable fees are those *necessary* to the collection and protection of a creditor's claim and include fees for those

12

actions which a similarly situated creditor might have taken. The fees must be cost justified by the economics of the situation and necessary to preserve the creditor's interest in light of the legal issues involved." *In re Digital Products Corp.*, 215 B.R. 478, 482 (Bankr. S.D. Fla. 1997).

Where the legal issues involved are complex, courts have awarded attorney's fees and costs in a sum that is large in comparison to the debt at issue. *See*, *e.g.*, *In re Numed Home Health Care, Inc.*, 310 B.R. 226 (Bankr. M.D. Fla. 2004) (awarding attorney's fees in the amount of $207,466 and costs in the amount of $20,885.48 to a creditor with a claim in the approximate amount of $905,000 on the petition date). "It is clear that creditors are entitled to engage counsel and pay for constant, comprehensive, and aggressive representation," *In re Wonder Corp. of Am.*, 72 B.R. 580, 591 (Bankr. D. Conn. 1987), and a secured creditor with legitimate concerns about the diminution in value of its collateral reasonably may incur substantial attorney's fees and costs protecting its collateral even when it has a significant equity cushion, *In re Schriock Construction, Inc.*, 210 B.R. 348 (Bankr. D.N.D. 1997) (awarding all attorney's fees and costs requested by a creditor who was grossly over-secured on the petition date where the rapidly depreciating nature of the creditor's collateral and the debtor's inability to confirm a plan of reorganization

jeopardized the creditor's right to payment of its claim). However, "where services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under § 506(b)." *In re Wonder Corp. of Am.*, 72 B.R. 580, 591 (Bankr. D. Conn. 1987).

## Discussion

The Debtors alleged from the start of these cases that neither Debtor owed money to FACE. The Debtors contended that the money FACE provided in the guise of a loan was never intended to be a loan. Instead, it was allegedly money given to the Debtors' principal, Mr. Scutieri, to settle a long-standing dispute between Mr. Scutieri and Raymond Chambers, whose personal funds directly or indirectly financed the FACE loan. As noted in the chronology of events earlier in this Order, the Debtors' intention to challenge the FACE note and mortgage was raised in the first month of the case in Debtors' response to FACE's SARE Motion [DE# 86], and continues to this day.[3]

Mr. Scutieri's strong insistence that neither he nor the Debtors owed anything to FACE pervaded this case and escalated

---

[3]The district court's order affirming the final judgment in the FACE Adversary is presently on appeal in the Court of Appeals for the Eleventh Circuit.

the litigation to an extent disproportionate to the amounts at issue.  The question is, should FACE be penalized for fighting fire with fire and going on the attack.  The answer is largely no.

FACE had a legitimate concern about the Debtors' ability to repay the FACE loan in a Chapter 11 plan, even if, as it fully expected, FACE established the validity and extent of its secured claim.  Indeed, their concern was justified as the Debtors' plan failed even with a reserve established to fund shortfalls.  Therefore, it was reasonable for FACE to oppose the Debtors' reorganization efforts.

In its painstaking (and painful) review of the docket in this case consisting of nearly 2,000 entries, this Court saw overwhelming evidence of contentious litigation not just between the Debtors and FACE, but also between the Debtors and Ocean Bank, and between the Debtors and the Codina Parties.  The Court finds that the Debtors and Mr. Scutieri were responsible for much of the excessive litigation.  Nevertheless, the Court cannot ignore that FACE incurred, and seeks reimbursement for, nearly four (4) million dollars in fees and costs to enforce and seek collection of a mortgage debt that was under $5 million dollars on the filing date of these cases.  Thus, the Court must look at FACE's actions and reduce the fees where it appears that FACE engaged in "overkill" and incurred fees for litigation that

was unnecessary or excessive, even in light of the Debtors' conduct. As discussed below, the Court concludes that all of the major battles in the main case and FACE Adversary were necessary and reasonable in the enforcement of FACE's claim. There were, however, some unnecessary actions taken by FACE and, in those battles that were necessary, FACE spent excess time.

The Court will now address the major time-consuming services performed by FACE's counsel in the main case and FACE Adversary.

**The SARE Motion**

As noted in the chronology, the Debtors did not file these cases as single asset real estate cases ("SARE") as defined in 11 U.S.C. § 101(51B). Shortly after the petitions were filed, FACE filed its SARE Motion in the Sundale case. It was entirely reasonable for FACE to pursue this relief. Attempting to expedite the Chapter 11 case by triggering the deadlines in § 362(d)(3) was an appropriate strategy by FACE to enforce the debt, particularly because the § 362(d)(3) deadlines do not begin to run until a creditor obtains an order finding that the debtor is a SARE. The Debtors strenuously opposed the SARE Motion and, as also noted in the chronology, the Debtors made it very clear in their opposition that they were disputing the FACE claim in its entirety [DE# 86]. Over the Debtors' strong objection, the SARE Motion was granted.

## **The Trustee Motion**

The Court also finds that it was reasonable for FACE to join with the Codina Parties (and Ocean Bank) in seeking the appointment of a Chapter 11 Trustee.  It is apparent from the filings in this case that all or virtually all of the major creditors distrusted Mr. Scutieri and had legitimate concerns about both his management of the Debtors and his good faith intent to reorganize.  Appointment of a trustee would have likely resulted in a sale of the property, and FACE would have been paid far sooner than under any plan then contemplated by the Debtors.  Lenders like FACE have a legitimate interest in getting paid sooner rather than later.  The fact that FACE was oversecured did not make it unreasonable to oppose a plan providing for deferred payments, particularly where the plan proponent strenuously objected to its claim.

Without question, the Trustee litigation took on a monstrous life of its own, consuming eight days of trial which were not completed until after the Debtors had already filed their plan. Although the Trustee Motion was denied, the Court's ruling was by no means a vindication of the conduct of the Debtors and their principals.  Indeed, the Court's Order Denying Trustee Motion noted that "[t]he Debtors have been sloppy or cavalier in many of their obligations" [DE# 906, p. 29].

Moreover, the prosecution of the Trustee Motion resulted in increased pressure on Sundale to file and pursue a Chapter 11 plan.  In fact, in the Order Denying Trustee Motion, Judge Isicoff made it clear that if the Debtors could not confirm their then-filed plan, "then the facts warrant appointment of a trustee" [DE# 906, p. 30].

Turning now to the overall reasonableness of the fees incurred in filing and prosecuting the Trustee Motion, FACE has already agreed to reduce the requested fees and costs by $91,860.50, consisting of $81,860.50 in fees and approximately $10,000 in costs attributable to the fire and safety issues litigated as part of the Trustee Motion.  This concession arises from preliminary findings by Judge Isicoff prior to her recusal. Upon review of the time records, this Court finds that a further reduction is appropriate for reasons discussed in the final section of this Order.

## Opposition to Plan

The Debtors accuse FACE of embarking on an "all-out war to oppose every effort or attempt by the Debtors to proceed with their reorganization, notwithstanding the substantial equity cushion that protected its secured debt and assured its ultimate payment" [DE# 1915, p. 5].  The Court finds that the Debtor started this war and that, in fighting hard to win it, FACE incurred fees that, in general, were both reasonable and

18

necessary to protect its rights.  Being oversecured is not the holy grail for a secured creditor, particularly where, as here, the feasibility of the proposed plan was in doubt and the plan treatment of FACE's claim proposed initially was blatantly unfair.

The Debtors' first plan did not provide for any monthly payments to FACE, proposing instead that all amounts due at confirmation and all unpaid and accruing postconfirmation interest would be paid at month 36.  Moreover, the plan and disclosure statement did not demonstrate feasibility because of the projected shortfall in operating income to fund the plan and the absence of solid evidence that Mr. Scutieri would and could cover the shortfalls.

Through the efforts of FACE, other objecting parties, and Judge Isicoff, the plan was confirmed only after Mr. Scutieri and the Debtors posted a reserve in excess of $2.5 million to cover the anticipated shortfalls.  *See* May 26, 2009 Order Confirming Debtors' Second Amended Chapter 11 Plan of Reorganization, p. 17 [DE# 1508].  Moreover, because it aggressively pursued its opposition to a negative amortization plan, the plan as confirmed included monthly payments to FACE and a requirement that any attorney's fees awarded also be amortized and included in monthly payments.

Despite the reserve account, the reorganized Debtor defaulted under the plan, proving FACE was correct in its fears that the Debtors and Mr. Scutieri would fail to meet their plan obligations and delay further FACE's collection of its loan debt. The Debtors' assurance of "ultimate payment," while possibly still accurate, remains delayed even further.[4] So, was FACE justified in opposing confirmation? Absolutely.

### The Face Adversary

The Debtors argue that FACE did not get to the "goal line" in its adversary proceeding as efficiently as possible. In large part, the Debtors' objection to the adversary fees is overruled. Obviously, the validity and extent of FACE's mortgage lien had to be litigated. It was the Debtors and Mr. Scutieri, not FACE, who raised affirmative defenses that greatly expanded the scope of the issues. This is revealed, among other places, in Defendants' Third Amended Answer, Affirmative Defenses and Counterclaims filed on September 8, 2009 [DE# 298]. That 44-page pleading contains 83 paragraphs of factual allegations covering 24 pages.

---

[4]On October 18, 2012, the reorganized debtor, now known as Sundale Consolidated, filed a Chapter 11 petition, Case No. 12-34958. At a hearing on November 2, 2012, the Debtor announced its intention to seek approval of a sale which the Debtor claims will yield sufficient proceeds to pay Samjaz and Face in full. Time will tell.

Primarily because of the issues the Debtors injected into the litigation, there was extensive discovery, several discovery motions, in which FACE was more often than not the prevailing party, and several depositions, some lasting two or more days. Even with the issues narrowed, the trial lasted eight days and the parties engaged in extensive post-trial briefing. Ultimately, the Court vindicated FACE's position that its claim was straightforward and supported by enforceable loan documents. The Court's findings included the following:

> For the reasons stated herein, I find that the <u>Plaintiff overwhelmingly established a prima facie</u> case that it holds a valid, perfected lien against the Sundale Property and the Trustee Property. Conversely, the <u>Defendants failed to meet their burden of proof in every respect</u> with regard to their affirmative defenses and their counterclaims.

Findings of Fact and Conclusions of Law [DE# 487 in 08-1312, p. 21] (emphasis added). As noted earlier, the Court entered its final judgment on November 12, 2012 (the "Adversary Judgment") [DE# 520 in 8-1312].

The Debtors appealed the Adversary Judgment to the district court. Defending the appeal caused FACE to incur significant additional fees. Besides having to address the arguments presented in the Debtors' 56-page appellants' brief, FACE was confronted with a Motion for Entry of Stay Pending Appeal [DE#

14] seeking to stop FACE from proceeding with its foreclosure action until the appeal was decided.  FACE filed a response, and the Motion for Stay was denied [DE# 28].

Adding to the expense of the appeal, at oral argument, the Debtors challenged the bankruptcy court's authority to enter a final judgment in the adversary, citing *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  This triggered a request by the district court for further briefing.

Ultimately, FACE prevailed in the appeal and the Adversary Judgment was affirmed in all respects in the district court's 24-page Opinion and Order issued on February 14, 2012 [DE# 46]. Although it rejected the Debtors' *Stern v. Marshall* argument, in an abundance of caution, the district court reviewed the record de novo, adopting and ratifying the findings and conclusions embodied in the Adversary Judgment even if these findings and conclusions were treated as a report and recommendation.  Not only did the district court reject the Debtors' primary argument that the FACE loans were never meant to be repaid, it found "Sundale's contention that sophisticated business persons would resolve a multi-million dollar dispute in a fashion described by Sundale's witnesses is preposterous" [DE# 46, p. 13].

### General Bankruptcy Matters

Finally, the Debtors argue that FACE filed various motions and objections in these cases that were unnecessary to protect

its rights as a secured creditor.  In part, this objection is overruled based upon the Court's earlier finding that FACE was justified in opposing the Debtors' reorganization efforts.    In part, the Debtors are correct.  Viewed in hindsight, FACE was so caught up in the heat of battle that it seemingly objected to almost everything the Debtors filed, whether or not it had any meaningful effect on FACE's claim or its justifiable efforts to oppose confirmation.

## A Reduction is Appropriate

The time records reflect that FACE's counsel did an excellent job in documenting the services they performed, and the Court accepts that the hours billed were hours actually spent performing the described services.  Still, in looking at the *Johnson* factors, including the time and labor required for certain tasks and the amount in controversy, the Court concludes that time was billed that was not reasonably necessary, even in the context of the major war started by the Debtor and Mr. Scutieri.

For example, a large amount of time was billed almost every month by paralegals, including, in particular, Lissette Merida. Part of her time was clearly paralegal work involving, for example, research or preparation of subpoenas.  However, other entries were for tasks such as compiling and organizing documents, emailing documents or pleadings to witnesses, and

putting together exhibit binders. While these services undoubtedly made life easier for the litigators, a reduction is appropriate.

The Court also finds that at times, there were more lawyers working on contested matters than were reasonably necessary. This resulted in numerous hours billed by several attorneys for interoffice conferences and strategy sessions. Again, the Court is not questioning that the time was spent, only commenting that there was "overkill" given the contested issues and the amount of FACE's claim.

As discussed earlier, and as evident from the docket and the time records, there were an unusually large number of contested matters in this case and in the FACE adversary, over twenty days of evidentiary hearings or trial, and dozens of days of depositions, all requiring extensive preparation. Moreover, the document production was exceptionally large and vigorously contested and document review was necessarily time-consuming. As noted earlier, because FACE was not the party primarily responsible for the scope of litigation, it should not be penalized for the higher than usual amount of time its attorneys spent in the litigation.

But there are limits. In addition to the examples already discussed, the Court notes additional reasons for reducing the fee and cost award, including the following:

1.   Several invoices contain entries for large numbers of hours of time without sufficient description, such as "prepare for and attend meeting" or "continue trial preparation."

2.   Excess time billed for several contested matters for research, drafting, revising, discussing and further revising papers.  This was particularly true where several attorneys were drafting, revising and discussing the contents of the filing.

3.   Time spent contesting minor issues not reasonably necessary to protect FACE's interest in collecting the debt, for example, billing over eight (8) hours to oppose appellants' motion for extension of time in the FACE Adversary appeal.

4.   Excessive time on discovery disputes, including some motions to compel or motions for protective order in which FACE was not the prevailing party.

5.   During the period following confirmation in the main case and following trial in the FACE Adversary, excess time was billed for numerous "strategy" sessions.

6.   After trial of the FACE Adversary, the primary attorney working on the submission of proposed findings and conclusions billed over 100 hours in January 2010 to prepare that filing.  The Court recognizes that it was a lengthy trial, but finds this to be excessive.

7.   Excessive cost charges, including significant charges for "litigation support services," some, as in the March 2009

bill, in months in which there were no evidentiary hearings or imminent hearings.  In addition, the bills reflect thousands of dollars of copying costs each month with no indication of the charge per page and costs for overhead on items such as meals, or overtime air conditioning usage that are not compensable under the Court's guidelines, or otherwise reasonable as part of this fee and cost award.

8.   Non-work travel time.

9.   Excess time in preparing for the several days of confirmation hearings.

10.  Time billed for work on the Foreclosure Case.  As noted earlier in this Order, FACE acknowledged that these fees must be sought in the state court and asserted that it did not intend to include them in the Fee Motion.  In reviewing the time records, the Court saw entries related to the Foreclosure Case, including, for example, several entries in the July 11, 2011 invoice.

11.  Time spent in connection with ancillary litigation or events in New Jersey, including, for example, several time entries in the July 9, 2008 invoice relating to picketing in New Jersey.

### The Final Calculation

Based upon all of the findings and conclusions discussed in this Order, and upon a detailed review of every invoice, the

Court is reducing the total requested fee and cost award (after the voluntary $91,860 reduction) by $690,316.45, resulting in a total award of fees and costs of $3,200,000.00.

## Conclusion

These Chapter 11 cases included more litigation than most cases ten or twenty times their size.  It is easy for the Debtors to look at the extraordinarily large fee request and cry foul.  But, after a thorough review of the record, and for the reasons discussed in this Order, under the unusual and unfortunate circumstances presented here, a substantial portion of the fees and costs requested in the Fee Motion are reasonable and allowable under FACE's loan documents and § 506(b) of the Bankruptcy Code.  Yes, the fees and costs are high, but they arose from litigation that was largely caused by the actions of the Debtors and Mr. Scutieri.

Therefore, it is –

**ORDERED** as follows:

1.   The Fee Motion is granted in the amounts provided below.

2.   FACE is allowed fees and costs under § 506(b) of the Bankruptcy Code in the total amount of $3,200,000.00 (the "Fee and Cost Award").

3.   The Fee and Cost Award may be enforced against the property securing FACE's loan and against each borrower in any

court of competent jurisdiction, including, without limitation, the Circuit Court, in and for Miami-Dade County, Florida.  This amount shall also be allowed as part of FACE's secured claim in the Chapter 11 case of Sundale Consolidated, Case No. 12-34958, presently pending in this Court.


###

COPIES TO:

Joel L. Tabas, Esq. (Counsel for Trustee, Soneet Kapila)
James D. Gassenheimer, Esq. (Counsel for FACE)
Gregory S. Grossman, Esq. (Counsel for Samjaz)
Kevin Gleason, Esq. (Counsel for Debtors)
Demetrios C. Kirkiles, Esq. (Counsel for Debtors)