

**ORDERED in the Southern District of Florida on April 19, 2021.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| In re: | ) CASE NO.  07-21016-BKC-RAM |
|  | ) CASE NO.  08-11050-BKC-RAM |
| SUNDALE, LTD., KENDALL HOTEL AND SUITES, LLC, | )(Substantively Consolidated) |
|  | ) |
| Debtors. | ) CHAPTER 7 |
|  | ) |

**ORDER DENYING MOTION**
**TO REOPEN AND MOTION TO VACATE**

Pending before the Court is the Motion to Reopen Chapter 7 Case Pursuant to 11 U.S.C. § 350(b) (the "Motion to Reopen") [DE# 2065] filed by Sundale, LTD, f/k/a Sundale Associates, Ltd., Kendall Hotel & Suites, LLC, and Philip Scutieri (collectively, the "Movants"), and Movants' Motion to Vacate Underlying Orders and Judgments Pursuant to Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. Rule 60(b) (the "Motion to Vacate") [DE# 2066].  Together with

these two motions, Movants also filed Movants' Verified Motion to Change Venue to a District Outside the State of Florida (the "Motion to Change Venue") [DE# 2067], and filed the Affidavit of Philip Scutieri (the "Scutieri Affidavit") [DE# 2068-1].

After review of the Motion to Reopen, the Motion to Vacate, the Motion to Change Venue, and the Scutieri Affidvit, the Court entered its April 30, 2020 Order (1) Denying Venue Motion, and (2) Setting Briefing Schedule on Motion to Reopen and Motion to Vacate (the "April 30th Order") [DE# 2070].

The April 30th Order set briefing deadlines on the Motion to Reopen and Motion to Vacate and set a deadline for James Gassenheimer and Paul Singerman to file affidavits, if they chose to do so. Berger Singerman, P.A. was counsel for a major creditor in this bankruptcy case, Florida Associates Capital Enterprises, LLC ("FACE"). FACE was also the Plaintiff in a significant adversary proceeding filed against the Debtors in this case, Adv. No. 08-1312 (the "FACE Adversary"). Mr. Gassenheimer was lead counsel for FACE; Mr. Singerman is a principal of the Berger Singerman law firm.

## Additional Filings and Orders

On May 5, 2020, Van Beuren Management ("VBM") filed Van Beuren Management's Consolidated Response in Opposition to [the Motion to Reopen and Motion to Vacate] ("VBM's Response") [DE# 2071]. On May 21, 2020, Paul Singerman filed the Affidavit of Paul Steven

Singerman In Response to [the Motion to Reopen and Motion to Vacate] [DE# 2073] and James Gassenheimer filed the Affidavit of James G. Gassenheimer in Response to [the Motion to Reopen and Motion to Vacate] [DE# 2074].

On July 27, 2020, Movants filed Movants' Reply [to VBM's Response] [DE# 2085].  Prior to filing their Reply, Movants filed Movants' Motion for Leave to Take Limited Discovery (the "Discovery Motion") [DE 2079].  On July 10, 2020, the Court entered its Order Denying Discovery Motion [DE# 2082].  As stated in that Order, discovery would only be appropriate if the Court finds it necessary to schedule an evidentiary hearing.

After review of the record, including the Motion to Reopen, the Motion to Vacate, the Scutieri Affidavit, the VBM Response and the Movants' Reply, and after review of applicable law, the Motion to Reopen and Motion to Vacate will be denied and there is no need to conduct an evidentiary hearing.[1]  First, the Court finds no cause to reopen this case.  The litigation between FACE and the Movants is long over and the allegedly "new" evidence of bias by Judge Isicoff is neither new nor significant.  Second, reopening the case to consider the Motion to Vacate would be futile because the Motion to Vacate lacks merit under Fed R. Civ. P. 60(b).

---

[1] Although the April 30th Order invited Mr. Singerman and Mr. Gassenheimer to file affidavits, the Court did not consider these affidavits in reaching the conclusions contained in this Order.

Finally, the Movants released all claims and potential claims against FACE in a fully enforceable settlement executed by Movants in 2013.  In sum, the Motion to Reopen and Motion to Vacate are nothing more than a way-too-late attempt to undo final judgments entered years ago in this bankruptcy case, in the FACE Adversary and in the state court foreclosure case.

## Background

The Court included substantial background in its April 30th Order.  Those background facts are repeated here and supplemented by additional facts relevant to the pending motions.

A.    **December 12, 2007** - Sundale, Ltd. ("Sundale") filed a chapter 11 petition initiating this case. Sundale was the owner of a hotel and adjacent land. The Sundale case originally was assigned to Judge A. Jay Cristol, but was reassigned to Judge Laurel Isicoff on January 17, 2008 [DE# 47]. On January 30, 2008, an affiliate, Kendall Hotel and Suites, LLC ("Kendall Hotel"), filed a chapter 11 petition, Case No. 08-11050.  On the petition date, Kendall Hotel managed and operated a hotel on Sundale's property pursuant to a lease agreement with Sundale. The Kendall Hotel case was assigned to Judge Isicoff, and the two cases were administratively consolidated. Sundale and Kendall Hotel will be referred to collectively as "the Debtors".

B.    **May 1, 2008** - FACE filed an adversary complaint against the Debtors, Adv. No. 08-1312 (the "FACE Adversary") seeking to

4

establish the extent, validity and priority of its lien against the Debtors' property.

    C.   **May 26, 2009** - The Court entered its Order Confirming Debtors' Second Amended Chapter 11 Plan of Reorganization [DE# 1508]. Under the confirmed plan, Sundale and Mr. Scutieri had three years to sell the Debtors' property and to pay all allowed secured and unsecured claims.

    D.   **October 8, 2010** – The Court conducted an eight-day trial in the FACE Adversary, and on October 8, 2010, Judge Isicoff entered *Findings of Fact and Conclusions of Law With Respect to Final Judgment in Favor of Plaintiff/Counterdefendant Florida Associates Capital Enterprises*, (the "Findings of Fact") [DE# 487 in 08-1312].

    E.   **November 12, 2010** - Judge Isicoff entered judgment in favor of FACE (the "FACE Judgment") [DE# 520 in 08-1312]. The FACE Judgment established the validity of FACE's lien and fixed the debt at $6,394,595.04. Judgment was also entered against the Debtors and in favor of FACE on the Debtors' counterclaims. The Findings of Fact included the following:

> For the reasons stated herein, I find that the <u>Plaintiff overwhelmingly established a prima facie case</u> that it holds a valid, perfected lien against the Sundale Property. Conversely, the <u>Defendants failed to meet their burden of proof in every respect</u> with regard to their affirmative defenses and their counterclaims.

[DE# 487 in 08-1312] (emphasis added).

5

F.  **December 28, 2010** - After Sundale defaulted under the Plan, FACE filed a foreclosure complaint against the Movant, Case No. 10-64400-CA-40 (the "Foreclosure Case").

G.  **July 14, 2011** – The Debtors' cases were converted to cases under chapter 7 [DE# 1875].

H.  **August 23, 2011** – The Court entered its Order Granting [FACE'S] Motion for Relief from Stay and Plan Injunction [DE# 1904]. This Order confirmed that the real property was not part of the chapter 7 estate, and therefore, the automatic stay was not applicable to the Foreclosure Case. The Order allowed FACE to complete its Foreclosure Case.

I.  **December 18, 2011** - The Debtors' principal, Philip Scutieri, delivered a three-page letter titled "Shenanigans in the Court" to Judge Isicoff's personal residence.  The letter included a section called "Court Corruption" and comments such as, "Sadly your court has become a den of conniving thieves likened to the Biblical Money Changers in the Temple."  The letter was docketed as a Motion to Recuse Judge [DE# 606 in 08-1312], and Judge Isicoff scheduled a hearing for February 8, 2012.

J.  **February 14, 2012 -** Judge Isicoff entered an Order Granting Request for Recusal (the "Recusal Order") [DE# 625 in 08-1312 and DE# 1959 in this case].  Pursuant to the Recusal Order, the Clerk issued Notices of Reassignment on February 14, 2012, reassigning the Debtors' cases and the FACE Adversary to the

undersigned [DE# 1960 in this case and DE# 626 in 08-1312].   The Recusal Order incorporated by reference the findings and conclusions stated on the record at the February 8th hearing.   As reflected in the transcript of the February 8, 2012 hearing [DE# 632 in 08-1312], Judge Isicoff recused under 28 U.S.C. § 455 because she concluded that Mr. Scutieri's delivery of a letter to her home might "cause an objective party to consider that my impartiality might be influenced either by a concern for my personal safety, or an adverse reaction on my part to the inappropriate contact" [DE# 632 in 08-1312, p. 16].   Despite granting the Motion to Recuse, Judge Isicoff expressly rejected Mr. Scutieri's argument that she was biased because of her alleged connections to FACE's lead counsel, James Gassenheimer [DE# 632 in 08-1312, p. 13].

K.   **February 14, 2012** - District Judge Marra issued a twenty-four (24) page Opinion and Order affirming the FACE Judgment [DE #624 in 08-1312].   The District Court rejected the Debtor's argument that the bankruptcy court lacked the constitutional authority to enter a final judgment, an argument based on *Stern v. Marshall*, 131 S. Ct. 2594 (2011).   However, because the court acknowledged that the scope of the *Stern* decision was unsettled, Judge Marra independently reviewed the entire record *de novo* and, to the extent the bankruptcy court's findings and conclusions had to be treated as a report and recommendation, the court adopted

and ratified the bankruptcy court's report and recommendation and entered its own final judgment in favor of FACE. [DE# 624 in 08-1312, pp. 23-24].

L.    **November 29, 2012** – The Court of Appeals for the Eleventh Circuit (the "Eleventh Circuit") issued its opinion affirming the FACE Judgment. *Sundale, Ltd. v. Florida Associates Capital Enterprises, LLC (In re Sundale, Ltd.)*, 499 Fed. Appx. 887 (11th Cir. 2012).

M.    **December 18, 2012** - Movants filed Sundale, Ltd.'s and Kendall Hotel and Suites, L.L.C.'s Motion to Vacate Findings of Fact and Conclusions of Law [DE-487] and Final Judgment [DE-520], Entered in Favor of Florida Associates Capital Enterprises, LLC, Pursuant to Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b) (the "First Rule 60(b) Motion") [DE# 638 in 08-1312]. Movants raised the same argument that they made in the Motion to Recuse, namely that Judge Isicoff's Final Judgment in the FACE Adversary should be set aside because of her alleged "undisclosed, longstanding and close personal relationship" with FACE's counsel, James Gassenheimer, and his wife. As a basis for Rule 60 relief, Movants referred to their independent investigation which revealed that Mr. Gassenheimer and Judge Isicoff both served as board members or officers of their synagogue. Movants claimed that this relationship created a bias that made it improper for Judge Isicoff to preside over this case.

N.    **December 26, 2012** - The undersigned judge entered an
Order Denying Motion to Vacate Judgment [DE# 639 in 08-1312]
incorporating by reference the findings and conclusions announced
on the record at the December 20, 2012 hearing on the First Rule
60(b) Motion.  The transcript of the December 20, 2012 hearing is
docketed as DE# 656-2 in 08-1312.  As reflected in the transcript,
the Court found that the motion was frivolous and insulting.  The
bench ruling reviewed the history of the case, including the Motion
to Recuse, and noted Judge Isicoff's findings at the February 8,
2012 hearing on the Motion to Recuse.

Based upon its review, the Court found that nothing in the
First Rule 60(b) Motion, including the allegation that Mr.
Gassenheimer and Judge Isicoff were both board members of their
temple, mandated recusal or provided a basis for Rule 60 relief.
The Court also referred to District Judge Marra's lengthy opinion
affirming Judge Isicoff's judgment in the FACE Adversary, an
opinion that included findings in favor of FACE after *de novo*
review.  Specifically and significantly, in its December 20th bench
ruling, the Court noted that "you have a District Court Judge whose
impartiality has certainly never been challenged that conducted a
*de novo* review and found substantial evidence to support the
findings of [Judge Isicoff]" [DE# 656-2, p. 16].

O.    **January 4, 2013** - Movants filed an appeal of this Court's December 26, 2012 Order Denying Motion to Vacate Judgment (the "January 4th Appeal") [DE# 640 in 08-1312].

P.    **January 29, 2013** - The state court entered a final judgment in the Foreclosure Case in favor of FACE in excess of $13 million and scheduled a foreclosure sale.

Q.    **April 8, 2013** - The District Court denied Movants' motion to certify the January 4th Appeal for direct appeal to the 11th Circuit. In the Order, District Judge Marra referred back to his February 14, 201 Opinion and Order affirming the FACE Judgment, reiterated that he had reviewed the evidence *de novo*, and stated the following:

> In sum, <u>this Court</u> reviewed all of the evidence that was heard by the bankruptcy court *de novo*, and <u>independently concluded that Appellants should not prevail on the merits of their claims.</u> While ordinarily a trier of fact should have the benefit of seeing the witnesses testify so as to observe their demeanor in assessing credibility, that benefit was not necessary for this Court to make an independent determination of the merits of Appellants' claims. <u>As this Court noted in ruling on the merits of the case,</u> <u>Appellants' assertions were both</u> <u>"implausible" and "preposterous."</u> That determination was apparent from the Court's review of the transcripts and documentary evidence. Thus, the fact that this Court did not have the benefit of observing the demeanor of the witnesses was immaterial. This Court's ruling was affirmed by the Eleventh Circuit Court of Appeals. Against this backdrop, Appellants cannot establish that they have a likelihood of success on the merits that an

alleged "improper relationship" of the
bankruptcy judge affected the outcome of this
case.

[DE# 17 in Case No. 13-20809-CIV-MARRA, p.4 (emphasis added)].

R.  **April 9, 2013** - The state court conducted the foreclosure sale and, after credit bidding its judgment, FACE was the successful bidder. On June 4, 2013, FACE was issued, and FACE recorded, a certificate of title.

S.  **May 29, 2013** - The Movants executed a settlement agreement with FACE (the "Settlement Agreement").  Several excerpts from the Settlement Agreement are quoted in VBM's Response [DE# 2071, pp. 21-24].  Material terms included (1) Movants' agreement not to impede the results of the foreclosure sale in the Foreclosure Case; (2) Movants' agreement to stipulate to dismissal of this bankruptcy case; (3) Movants' unconditional and irrevocable acknowledgement and ratification of the judgment in the Foreclosure Case, and the FACE Judgment and agreement to be bound by these judgments; and (4) Movants' release of any claims against FACE.  In exchange, FACE agreed to pay Mr. Scutieri the sum of $6,500,000 (The Sundale Property was sold and Mr. Scutieri received the $6,500,000 payment).

T.  **June 10, 2013** - Pursuant to the Settlement Agreement, the Movants stipulated to dismissal of their appeal of this Court's Order Denying Motion to Vacate and the appeal was dismissed with prejudice [DE# 662 in 08-1312].

U.  **January 5, 2017** - The Court issued a Final Decree closing this case [DE# 2049].

V.  **March 28, 2018** - The District Court dismissed Debtors' appeal of the Final Decree in District Court Case No. 17-20255-CIV-GAYLES [DE# 2060].

W.  **January 3, 2020** - The Eleventh Circuit issued its Opinion affirming the Final Decree [DE# 2064]. *Sundale Associates, Ltd. v. Soneet Kapila (In re Sundale, Ltd.)*, 789 Fed. Appx. 214 (11th Cir. 2020).  At the end of the opinion, the Court stated the following:

> Insofar as the appellants are seeking to bolster their previously-asserted recusal claim with new evidence - evidence they apparently learned of in 2015 - this appeal is not the vehicle to do that.  The appellants must try to file a new Rule 60(b) motion in the bankruptcy court and present their new evidence there.

*Id.* at 215; [DE# 2064, p. 5].  The Court added in a footnote that "[w]e express no view on whether such a Rule 60(b) motion would, could or should succeed," *Id.* at 215, n.2; [DE# 2064, p.5, n.2].

X.  **March 2, 2020** - Movants filed their Motion to Reopen.

Y.  **March 3, 2020** - Movants filed their Motion to Vacate and Motion to Change Venue.

## Discussion

Movant's Reply [to VBM's Response] argues that the Court should grant the Motion to Reopen and then determine the merits of the Motion to Vacate [DE# 2085].  Movants also argue that "[a]

review of the directive of the 11th Circuit illustrates that it was anticipated that the case should be reopened." [DE# 2085, p.3].

The Court disagrees. First, the 11th Circuit did not opine on whether this case should be reopened to consider yet another Rule 60(b) challenge. It ruled that an appeal from the final decree was not a vehicle for the Movants "to resurrect their foregone challenges to the Rule 60(b) denial." [DE# 2064, p.5]. The court stated that the correct procedural vehicle would be a new Rule 60(b) motion. However, as quoted in paragraph W. above and quoted again here, the 11th Circuit opinion also stated that "[w]e express no view on whether such a Rule 60(b) motion would, could or should succeed." [DE# 2064, p.5, n.2] (emphasis added). Second, and more importantly, this Court finds no cause to reopen the case because the record establishes overwhelmingly that the Motion to Vacate has no merit.

11 U.S.C. § 350(b) authorizes courts to reopen closed cases "to administer assets, to accord relief to the debtor, or for cause."  The statute does not define "cause" for reopening, and bankruptcy courts have broad discretion to determine whether cause exists to reopen a case. *In re Easley-Brooks*, 487 B.R. 400, 406 (Bankr. S.D.N.Y. 2013); *In re Judson*, 586 B.R. 771, 772 (Bankr. C.D. Cal. 2018).  Factors courts consider include the length of time the case was closed, whether any parties would suffer prejudice by reopening, and whether it is clear that no relief

would be forthcoming if the case was reopened. *In re Kim*, 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017).

These factors weigh heavily against reopening the case. First, this case was closed more than three years ago in January 2017. Second, VBM would be prejudiced if the case was reopened and the FACE Judgment and other Orders were vacated. There are presently 2085 docket entries in this case, more than 2000 of which preceded the May 29, 2013 Settlement Agreement, 663 entries in the FACE Adversary, and scores of papers filed in numerous appeals. Essentially, starting over is an unjustified request for extraordinary relief given the scant cause articulated by the Movants.

The last factor is the most compelling. On this record, this Court will not, and could not, afford relief to the Movants on their Motion to Vacate, so reopening would be futile. First, the Movants have settled and released all of the claims they seek to relitigate if their Motion to Vacate was granted. Second, as discussed more fully below, the newly-discovered fact for arguing again that Judge Isicoff had to recuse provides no cause to grant the Motion to Vacate.

## A.    The Release Executed in the Settlement Agreement Released All Claims Against VBM

As described in paragraph S. above, the Movants executed the Settlement Agreement with FACE on May 29, 2013. Nearly seven years

later, Movants filed the Motion to Vacate seeking to vacate the FACE Judgment and to contest FACE's secured claim. Movants' right to do so was specifically released in the Settlement Agreement in which the Movants agreed to be bound by the FACE Judgment "in every court in every jurisdiction, and anywhere in the world (and all of the orders which are part thereof.)" Settlement Agreement, p. 7 ¶ 8).

In his Affidavit in support of the Motion to Vacate, Mr. Scutieri states that after the First Rule 60(b) Motion was denied, he went to Baptist Hospital for treatment. He then states that "[i]t is my belief that Baptist Hospital tried to harm me while I was in treatment." DE# 2068-1, ¶ 27. He then adds that while in "a debilitated physical and mental state, I entered into a settlement agreement relating to this case and lost the Property as a result." *Id.*

These statements by Mr. Scutieri do not establish cause to set aside the Settlement Agreement and the Release. In particular, the Settlement Agreement includes a provision that provides as follows:

> The Scutieri Parties have had the opportunity to receive independent legal counsel and advice with respect to their negotiation of and their obligations under this Agreement. The Scutieri Parties have entered into this Agreement freely, voluntarily, and of their own free will and accord without any threat of force or duress of any nature whatsoever.

Settlement Agreement, p. 9 at ¶ 10.2(c).  In sum, the Court finds that the Movants have settled their claims against VBM and released and waived any right to resurrect these claims.  On this basis alone, the Motion to Vacate must be denied.

### B.   The Motion to Vacate Lacks Facts to Support the Allegations of Bias

Against the backdrop of this long history of adverse judgments, appellate affirmances and the execution of a Settlement Agreement releasing all claims, the Movants present one old and only one new factual basis to support the Motion to Vacate.

The motions and Mr. Scutieri's Affidavit [DE# 2068] include an old allegation that Judge Isicoff should have recused because of her out-of-court relationship with FACE's lead counsel, James Gassenheimer, in particular, their common activities as board members of the same synagogue. The new allegation is that Judge Isicoff should have recused because of the financial contribution by Paul Singerman to the charitable foundation created by Judge Isicoff and her husband in honor of their late son. Mr. Singerman is a partner in the law firm that represented FACE.

Recusal is governed by 28 U.S.C. § 455.  Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Subsection (b)(1) provides that a judge should also disqualify himself "[w]here he has a personal bias or prejudice concerning a

party." The 11th Circuit has provided an objective test for recusal, namely "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a <u>significant doubt</u> about the judge's impartiality." *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1524 (11th Cir. 1988) (emphasis added) (citation omitted).

The undersigned addressed Movants' concerns about the out-of-court relationships between bankruptcy judges and lawyers in its December 20, 2012 bench ruling denying the First Rule 60(b) Motion, and the Court stands by its prior remarks, including the following:

> Judges are not monks. We're not walled off into some monastery where we don't talk to lawyers and know lawyers. . . .
>
> So, judges aren't bound to, fortunately, to live in isolation from the Bankruptcy Bar or from community activities. We can and do serve on non-profits [such] as churches and temples. We can and should and do actively participate in local, state and national professional associations, Bankruptcy Bar Association, American Bar Association, the American Bankruptcy Institute. We can, should, and do lecture at programs that often include lawyers who practice in our courts, lawyers who are sometimes organizing these programs, lawyers who are sometimes serving as co-panelists, who we are interacting with in planning these presentations. ...
>
> None of these activities create an appearance of impropriety.

The record presented in the First Rule 60(b) Motion strongly supported the Court's ruling and its decision to announce a bench ruling on the motion without inviting oral argument or conducting an evidentiary hearing.  The Court stands behind the reasoning in its December 20, 2012 bench ruling, including the Court's important reference to District Judge Marra's *de novo* review of Judge Isicoff's findings and conclusions in Judge Marra's Order affirming the FACE Judgment.

The fact that FACE's lead counsel, Mr. Gassenheimer, is a member of Judge Isicoff's synagogue and served on the Board with Judge Isicoff was already rejected as a basis for recusal when this Court denied the First Rule 60(b) Motion over eight years ago.  The new fact, namely that Mr. Singerman contributed to the charity Judge Isicoff and her husband formed in honor of her late son, barely moves the meter that tilted heavily against recusal when this Court denied the First Motion to Vacate.

Movants cite a recent district court decision in support of the extraordinary relief they seek.  *Clark v. Kapila (In re Trafford Distributing Center, Inc.)*, 612 B.R. 808 (S.D. Fla. 2019). In *Trafford*, Bankruptcy Judge Olson denied a motion to recuse that was based upon his future husband's employment by the law firm representing the Trustee.  During the pendency of the appeal of the recusal motion, Judge Olson recused.  Ultimately, the district court had to consider whether there was cause to vacate the

judgment and sanctions order that Judge Olson entered after his future husband was hired.

Under the facts of the case, District Judge Moreno found an "obvious and inescapable appearance of impropriety." 612 B.R. at 817. The basis for the court's conclusion was summarized as follows:

> Upon careful review of <u>the facts unique to this case</u>, the Court holds that there is a reasonable basis for questioning the judge's impartiality. Consider: neither Judge Olson nor Appellee disclosed the hiring of Fender; Fender's hiring offered a "thing of value" to the judge with whom he was living and with whom he was engaged to be married; this thing of value was offered for the first time while motions for summary judgment were pending; shortly after Fender's hiring, the judge issued a permanent injunction and sanctions based on the same conduct for which he previously dissolved the temporary restraining order. These facts create the inescapable and obvious appearance of impropriety.

*Id.* (emphasis added).

In distinguishing cases cited by Judge Olson in his recusal order, Judge Moreno referenced Judge Altonaga's decision in a related matter in which Judge Altonaga explained that, "in none of these cases was a new thing of value added to the judge's household while litigation was pending." 612 B.R. at 818 (referencing *Liberty Props. at Trafford LLC v. Kapila* (*In re Trafford Distributing Center, Inc.*), No. 18-24579-CIV-ALTONAGA (S.D. Fla. Aug. 9, 2019)). Judge Moreno went on to state that "Judge Olson

was disqualified as soon as the firm offered a thing of value to him during the course of litigation." *Id.* (citations omitted).

In deciding whether to vacate the Judge Olson judgments, the *Trafford* court stated that "the seriousness of the error and violation of section 455(a) was so great that the Court's only available remedy is to deprive the Appellee of his judgment." 612 B.R. at 819. Finally, in summation, the court stated that "a failure to vacate the proceedings below will likely jeopardize the public's trust and confidence in the judiciary." 612 B.R. at 820.

The facts and reasoning in *Trafford* do not support granting the Motion to Vacate here. There is no evidence or allegation that Judge Isicoff had a financial interest in the outcome of the FACE Adversary. The Scutieri Affidavit merely states that "I feel that the Judge naturally had feelings that favored the prominent attorneys who supported her Charity." [DE# 2068-1, pp. 3-4].

Finally, the *Trafford* court expressed concern about Judge Olson's order that led to the Appellant facing an $80,000 fee award for an alleged continuing stay violation that "arguably never even was a violation in the first place, much less continuing." 612 B.R. at 819. To be clear, the *Trafford* court did not find that Judge Olson committed reversable error on the merits of his rulings. The point is, there was a concern that these rulings should be vacated because of the risk of injustice to the Appellants in that case.

20

There is no risk of injustice to Movants based on any of the recusal allegations, whether old or new. Judge Isicoff's Orders and the FACE Judgment were affirmed on appeal. Moreover, as noted several times previously in this Order, District Judge Marra affirmed the FACE Judgment after *de novo* review of the record.

## Conclusion

Before the Court is a Motion to Vacate filed more than nine years after entry of the FACE Judgment, seven years after the Movants settled with and released all claims against FACE, and five years after the discovery of a contribution by Mr. Singerman to a charitable foundation created by Judge Isicoff in honor of her deceased son. The Court has spent considerable time reviewing the record and concludes, without hesitation, that no lay observer with knowledge of this record would have any doubt, much less "significant doubt", about Judge Isicoff's impartiality in this case. Therefore, there is no basis to grant the Motion to Vacate and no cause to reopen this case.

Based upon the foregoing findings, conclusions, and discussion, it is –

**ORDERED** as follows:

1.   The Motion to Reopen is denied.

2.   The Motion to Vacate is denied.

3.   Under the Settlement Agreement, VBM is entitled to, and is hereby awarded, reasonable costs and fees incurred in opposing

the Motion to Reopen, the Motion to Vacate, and the Motion to Change Venue.

4.    By May 13, 2021, VBM shall file a Motion to Liquidate the Fee and Cost Award (the "Motion to Liquidate"). As an exhibit to the motion, VBM shall attach time entries and descriptions supporting the fees sought and provide detail on any costs incurred.

5.    When VBM files the Motion to Liquidate, the Court will enter an Order setting a deadline for Movants to file their objections to the fees and costs requested and a deadline for VBM to file a Reply in response to any objections.

###

COPIES TO:

Joel L. Tabas, Esq. (Counsel for Trustee, Soneet Kapila)
25 SE 2nd Avenue
Suite 248
Miami, FL 33131

Douglas C. Broeker, Esq.
12700 Biscayne Blvd.
Suite 402
Miami, FL 33181

James D. Gassenheimer, Esq.
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131

(Attorney Broeker is directed to serve a copy of this Order on all interested parties and to file a Certificate of Service.)